1                    IN THE UNITED STATES DISTRICT COURT

2                        FOR THE DISTRICT OF WYOMING

3     ----------------------------------------------------------------

4     UNITED STATES OF AMERICA,              Case No. 13-CR-00004-J

5              Plaintiff,                     Cheyenne, Wyoming
                                             July 26, 2013
6              vs.                            2:23 p.m.

7     JACQUELINE GARCIA,

8              Defendant.                     **CERTIFIED COPY**

9     ----------------------------------------------------------------

10

11

                     TRANSCRIPT OF SENTENCING PROCEEDINGS
12
                     BEFORE THE HONORABLE ALAN B. JOHNSON
13                      UNITED STATES DISTRICT JUDGE

14

15    APPEARANCES:

16    For the Plaintiff:      MR. STUART S. HEALY III
                              Assistant United States Attorney
17                            UNITED STATES ATTORNEY'S OFFICE
                              P.O. Box 668
18                            Cheyenne, WY 82003-0668

19    For the Defendant:      MR. THOMAS A. FLEENER
                              Attorney at Law
20                            FLEENER & VANG LLC
                              119 Grand Avenue
21                            P.O. Box 913
                              Laramie, WY 82073-0913

22

23    Court Reporter:         JULIE H. THOMAS, RMR, CRR
                              2120 Capitol Avenue, Room 2228
24                            Cheyenne, WY 82001
                              (307)778-0078   CA CSR No. 9162
25

      Proceedings recorded by mechanical stenography,
      transcript produced by computer.

1                              I  N  D  E  X

2

JUDGMENT AND SENTENCE                                              PAGE

3
Argument by Mr. Fleener                                               9
4    Allocution of the Defendant                                        11
     Judgment and Sentence of the Court                                 13
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       (Proceedings commenced 2:23 p.m.,

2       July 26, 2013.)

3            THE COURT:  Thank you.  Please be seated.

4            Thank you.

5            MR. HEALY:  Good afternoon, Your Honor.  We're here

6  today in the matter of sentencing in the United States of

7  America versus Jacqueline M. Garcia, Docket No. 13-CR-04-01J.

8  The defendant was indicted on January 15th, 2013.  She made

9  her initial appearance and was arraigned on January 23rd.  She

10  proceeded to jury trial standing on her not guilty plea on

11  May 8th, 2013, and a jury returned guilty verdicts on both

12  counts of the Indictment, which include Count 1, conspiracy to

13  possess with intent to distribute methamphetamine, and

14  Count 2, possession of a firearm in furtherance of a drug

15  felony.

16            The presentence report was prepared on June 14th,

17  2013.  The Government filed a response letter that really

18  contained no objections per se.  Mr. Fleener has recently

19  filed a sentencing memorandum where he apparently joins in

20  Mr. Molina's objections to the level 36.  The computation of

21  drug quantity by the Probation Office is found on pages 9 and

22  10 of the PSR.  Paragraph 24 sets out a base offense level of

23  36.  I don't have an agent to testify today, Your Honor,

24  because I think that a level 34 is probably appropriate based

25  on the testimony.  I think that some of the materials that

1   Probation received would -- do support the finding of a 36,

2   but the Government would prefer to stand on the testimony of

3   the witnesses, and the Court is familiar with that testimony.

4   So I believe a base offense level of 34 is appropriate, which

5   would lead to a total offense level of 34 in paragraph 32.

6           The criminal history is set out on page 11.  The

7   criminal history is a Criminal History Category of I.

8           On page 16 the probation officer notes that, in

9   paragraph 60, if the Court agrees with the Government and the

10  defendant that an offense level of 34 and a Criminal History

11  Category of I, the guideline imprisonment range is 151 to 188

12  months.  Count 2 is a mandatory 60 months consecutive.

13          Paragraph 62 indicates that supervised release of not

14  more than five years is mandatory on Count 1.  It's actually

15  not less than five years, but the Government believes that a

16  supervised release of five years is appropriate in this case.

17          The Government agrees with the special conditions of

18  supervised release found in paragraph 65.  A $200 special

19  assessment is necessary, and a fine of some kind would

20  probably be appropriate in this case and even beneficial to

21  the defendant in light of her incarceration.

22          Thank you, Your Honor.

23          THE COURT:  Thank you, Mr. Healy.

24          I, too, was impressed with and appreciated the effort

25  of Mr. Fleener's coadjutor, Mr. Jubin, to refresh the Judge's

1   memory as to testimony that occurred at trial when considering

2   the issue of drug quantity.  And even then it's a pretty loose

3   calculation.  Could be either one or more in that the

4   involvement with methamphetamine predated certainly the

5   conspiracy in this matter, and we don't have testimony in that

6   regard.

7           I have, in addition to the presentence investigation

8   report in this matter, the prosecutor's statement that has

9   been provided in this case, the memorandum of sentencing from

10  Mr. Fleener, the attachment thereto of various letters:  a

11  letter from Jenna Muniz, a friend who met through children; a

12  letter from Lacey Jay Cole, a six-year friend of both Jackie

13  and Sigi; a letter from Angela Garcia also signed by Wendy

14  Molina; a letter from Dawn Withhorn; a longer letter from

15  Wendy Molina dated July 9th, 2013; a lengthy letter from Shane

16  Draper.  Are all matters that the Court has read, and they

17  were all positive letters concerning really both, both

18  defendants.  And it has been unusual in consideration of this

19  case that, in terms of a number of individuals, they have very

20  favorable and close friendships with Miss Garcia and

21  Mr. Molina that have developed through the years.  I do recall

22  the testimony of and the meetings that we've had with

23  Miss Blankenship who struggled greatly with her loyalty to

24  Mr. Molina and Miss Garcia, obviously, although her life in

25  this regard was another story, but certainly there was no

1  doubting the sincerity of her, her feelings towards the

2  couple.

3          Very well, if the defendant will come forward and

4  raise her right hand and be sworn.

5          COURTROOM DEPUTY:  Please raise your right hand as

6  best you can.

7      (The defendant was sworn.)

8          COURTROOM DEPUTY:  Thank you.

9          THE COURT:  Please state your full name.

10          THE DEFENDANT:  Jacqueline Marie Garcia.

11          THE COURT:  Are you under the influence of any drug,

12  alcohol, pill, or medication today?

13          THE DEFENDANT:  No.  No, sir.

14          THE COURT:  Are you taking any pills at all?

15          THE DEFENDANT:  Just high blood pressure pills.

16          THE COURT:  All right.  Is there anything, any reason

17  you know why you cannot participate in this proceedings today?

18          THE DEFENDANT:  No, sir.

19          THE COURT:  Your health's okay?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  But you do have high blood pressure?

22          THE DEFENDANT:  Yes.

23          THE COURT:  All right.  Through Mr. Fleener have you

24  received a copy of the presentence investigation report?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  Have you had a chance to read it and

2    discuss it with him?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Do you feel you understand it?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  I think Mr. Healy has accurately summed

7    up the report.  In terms of the calculation of the sentence

8    guideline in this matter and the criminal history, that is,

9    the offense level and the criminal history, I agree with

10   Mr. Healy, and I agree with you, the argument you are making,

11   Mr. Fleener.

12         MR. FLEENER:  Yes, Judge.

13         THE COURT:  Based upon the testimony received at

14   trial, this case would fall within a base offense level of 34.

15         MR. FLEENER:  Yes, sir.

16         THE COURT:  And that would be the total offense level

17   in this case.

18          There was a theft charge, paragraph 36, and some

19   driving under the influence of alcohol dating back to 1990 and

20   1992.  Those charges were not counted.  The theft occurred in

21   2001 and is counted as one point.  However, that leaves her,

22   Miss Garcia, in a most favorable Criminal History Category of

23   I in calculating the sentence in this case.  And I would note

24   that a person at level 34, Criminal History Category I, would

25   be in a sentencing range of 51 to 188 months.

1              THE REPORTER:  Your Honor, 51?

2              THE COURT:  151 to 188 months.  I find that is the

3    appropriate calculation in this matter.

4              Count 2, the 924(c)(1)(A) charge, requires a

5    mandatory sentence of 60 months of imprisonment to be imposed

6    consecutively to whatever sentence is imposed on Count 1.

7              The recommendation in this case that we've received

8    from Mr. Fitzgerald, who I don't think was intending to be

9    presumptuous in this matter, suggested that given the minimum

10   mandatory sentence on Count 1 and the minimum mandatory

11   sentence on Count 2, that both of those -- that a departure or

12   a variance should occur to achieve a sentence at those minimum

13   mandatory terms as sufficient but not greater than necessary

14   to achieve the purposes of sentencing under federal law which

15   consider the defendant, her involvement -- and we do note that

16   she has a clean criminal history essentially; she was in every

17   sense, it seems to me, a partner of Mr. Molina in the activity

18   that went on in the household -- to not depreciate the

19   seriousness of the offense, to incapacitate her from

20   committing similar offenses in the future, and to consider

21   also in the sentence possible treatment that may be of benefit

22   at some future time for her.  I would say that, in any event,

23   the sentence here is a removal sentence, whether we look at it

24   from the standpoint of the guideline or the minimum

25   mandatories that are involved in this matter.

1           Mr. Fleener, I'd be pleased to hear from you or to

2   hear from your client.

3           MR. FLEENER:  Thank you, Judge.  And so the Court, so

4   the Court knows, I join Mr. Jubin's objections to

5   sentence -- or to drug quantity.  Rather than filing my own --

6   stealing his words and filing my own form, I just joined his

7   objections.  I figured it would save the taxpayers money, and

8   I knew that the Court was, was -- while sentencing is an

9   individual act, they were -- they've been partners for 20

10  years and that what applied to Sigi generally applied to

11  Jackie as well.

12          A couple things I would like to, like to bring up,

13  Judge.  First, we'd like a strong recommendation by the Court

14  not only for residential drug treatment, which is appropriate

15  in this case.  She may not get the benefit for it as far as

16  reducing her sentence, but she certainly needs, needs RDAP.

17  She's had issues with substance abuse throughout her life and

18  would only benefit from residential treatment.

19          We'd also ask that the Court make a recommendation

20  that she be housed in Waseca, Minnesota.  Her family -- my

21  perusing the BOP's websites and understanding of how

22  placements are conducted, a lot of folks -- a lot of women

23  that come out of Wyoming are either getting assigned into

24  Phoenix or out west into California, because apparently

25  Wyoming falls under the western branch, but I would note for

1   the record and I would ask that the Court consider the fact

2   that all of Jackie's family essentially lives in eastern

3   Nebraska, and a placement in Waseca would put them within four

4   and a half, five hours away, which is, of course, much closer

5   than Arizona or out in California.  So we would ask for

6   Waseca, Minnesota, to be where she is placed.

7           I appreciate Mr. Healy's comments to the PSI.  I

8   appreciate Mr. Fitzgerald's work in the PSI and his

9   recommendations as well.  Would also argue that a 15-year

10  sentence is -- 180 months is certainly sufficient in this case

11  to settle the -- or satisfy all the requirements under Section

12  3553(a) and is a very, very long sentence.  Because Ms. Garcia

13  will be appealing the conviction, appealing the jury trial, I

14  have advised her to essentially remain silent at this point.

15  However, she does want to express to the Court and to her

16  family that she's sorry and is ready to get to the next

17  chapter of her life, whatever that may -- however that may

18  look.

19          The last few months, I'd also point out, and I don't

20  blame the Marshals Service for that because they're certainly

21  most accommodating on almost everything else, but after the

22  trial was conducted she -- she and Sigi had been housed

23  together in Scotts Bluff for six months, five months.  Once

24  the trial was conducted, she was moved to Scotts Bluff -- or,

25  excuse me, to Torrington because I think the Marshal

1   made -- well, I spoke with the Marshal about it.  You know,

2   the Marshal made a determination that it would be best to not

3   have Ms. Blankenship and some of the others in Scotts Bluff

4   who had testified against Ms. Garcia.  What the result of that

5   was, though, was that she was away from Sigi in Torrington for

6   the last two months.  And I tried dozens of times to get, to

7   get Marshal Moore to relent and move her back to Scotts Bluff,

8   and he chose not to do so.  I'm hopeful that he does so now

9   because I believe Ms. Blankenship has moved off, and it would

10  be nice for Jackie and Sigi to at least say goodbye.  They've

11  been together for 20 years.  So that's been a hardship on

12  Ms. Garcia, her family.  The visiting days in Torrington were

13  different than the visiting days in Scotts Bluff, so when

14  family came to visit, they ended up visiting Scotts Bluff and

15  not being able to visit in Torrington.  So she did face some

16  personal hardship, which is something I would ask the Court to

17  consider.

18          So all in all, Judge, with a recommendation for

19  Waseca, Minnesota, and residential drug treatment, Ms. Garcia

20  will remain silent, but we would argue that 180 months is

21  appropriate on both counts.  Thank you, Judge.

22          THE COURT:  Miss Garcia, I'm certainly willing to

23  hear any argument or anything you wish to say before the Court

24  determines what your sentence will be.

25          THE DEFENDANT:  I'm sorry for all of this.  And I

1   think drug treatment would be all right for me.

2         THE COURT:  All right.  There may be some things that

3   I'll say now that I really don't have a strong basis for, and

4   I don't object if you disagree with me.  I'm just taking a

5   look at some of the underlying facts of this case.

6         You are 47 years old, and you're appearing for

7   sentencing in connection with your first felony offense, and

8   this is your second countable criminal offense, offenses.  It

9   is surprising that you find yourself, for many reasons,

10  standing before this Court after a jury decision that's found

11  you guilty of violations alleged in Counts 1 and 2 of the

12  Indictment in this matter, but it appears that you may have,

13  dabbling in controlled substances and methamphetamine,

14  certainly slid into something much greater in terms of your

15  own use of it, if nothing else, following the loss of your

16  daughter at age 15, together with some -- with antisocial

17  thinking and behavior certainly with regard to violation of

18  the drug laws of the United States.  To the extent -- it is

19  understandable that you are not the first person to medicate

20  or self-medicate very difficult emotions, emotions that

21  persist after the loss of a loved one.  Witness the number of

22  persons who turn to alcohol at those times.  But it is quite

23  another to take that to the next step of creating a drug

24  conspiracy and drug dealing and incorporating methamphetamine

25  as part of a lifestyle.

1           The penalty is very serious here.  And I can't help

2    but notice that many of the people who you were associating

3    with in this conspiracy were young people from Gillette,

4    Wyoming, and that community.  And of course, they, too, felt a

5    loyalty to you and did not find it easy to come here to

6    testify under oath in this proceedings.

7           The sentence in this case, as I mentioned, is one

8    that is heavy.  It is dictated largely by Congress, and I say

9    that because the Court will adopt the recommendation that I've

10   received from Probation, but also more than that because I

11   think it is appropriate in this matter and not objected to by

12   the Government that would allow a variance.  We look to the

13   fact that you have very little criminal history in your

14   background, and that variance will take you down to offense

15   level 31, which would be a sentence between 108 and 135

16   months.  And it is based upon that and a Criminal History

17   Category I that this sentence is imposed.

18           Pursuant to the Sentencing Reform Act of 1984 and the

19   factors enumerated in Title 18 United States Code Section

20   3553(a), it is and will be the judgment and sentence of the

21   Court that the defendant, Jacqueline M. Garcia, is hereby

22   sentenced to a term of 120 months for Count 1, the drug

23   conspiracy, to be followed by a consecutive term of 60 months

24   for Count 2, in custody of the Bureau of Prisons.  Both of

25   these are minimum mandatory terms of imprisonment.

1          Upon your release from imprisonment the defendant

2    shall be placed on supervised release for a term of five years

3    for each count, and those counts then are to be served

4    concurrently and not consecutively.  That is, the supervised

5    release will be served concurrently.

6          Within 72 hours of release from custody of the Bureau

7    of Prisons defendant shall report in person to the Probation

8    Office in the District in which she is released or to which

9    she is released.  And while on supervised release she shall

10   comply with the mandatory and standard conditions adopted by

11   this Court and shall comply with the following special

12   conditions.

13          The defendant shall participate in and successfully

14   complete substance abuse treatment in a program approved by

15   the United States probation officer, abiding by the rules,

16   requirements, and conditions of the treatment program, and

17   shall not discontinue treatment without permission of the

18   probation officer.  It is the intention of the Court that you

19   receive the assistance that you have requested with regard to

20   substance abuse addiction and the situation that it has driven

21   you to in this matter.  I fully concur in the decision of the

22   probation officer that a treatment program would be

23   appropriate for you.

24          The defendant shall submit to drug and alcohol

25   testing as directed by the U.S. probation officer and shall

1   comply with specific copays imposed pursuant to District

2   policy should she fail to comply with drug testing.  Here

3   again, testing is a means of providing credibility to a drug

4   treatment program, a means of keeping the Court informed as to

5   the progress that the defendant is making in her quest to

6   remain and lead a sober and drug-free life, and also is an

7   added incentive to her to be drug free.

8           As a component of her treatment and testing program

9   she shall pay a one-time fee of $250 to partially defray the

10  costs of treatment and drug testing, payments to be made by

11  cashier's check or money order to the Clerk of the District

12  Court here in Cheyenne utilizing the payment coupons provided

13  by the probation department.  This condition is waived if she

14  is supervised in a district other than the state of Wyoming or

15  the District of Wyoming.

16          Another special condition is that the defendant shall

17  refrain from any use or possession of alcohol or other

18  intoxicants, including over-the-counter medications used

19  contrary to the recommended dosage or the intentional

20  inhalation of any substance, prescribed or otherwise, without

21  permission of the United States probation officer.

22  Additionally, she shall not enter establishments whose primary

23  income is derived from the sale of alcohol.  It makes no sense

24  for her to substitute another addiction for one that's

25  destroyed her life.

1              THE DEFENDANT:  Yeah.

2              THE COURT:  And any addiction is going to do that,

3    and she needs to take care of herself at this point.  I would

4    say this about drug treatment programs, whether it's AA or NA

5    or residential drug abuse treatment program or another program

6    that may be set up for you.  The people who attend those

7    programs are people who have addiction problems, and there are

8    all kinds of people.  There are people there who are there

9    just to hook up with somebody who can give them some drugs,

10   and there are also people there who are good people who are

11   trying to sincerely to get straight in their lives.  So you

12   have to make decisions as to who's important for you and who

13   you will be safe around, because that addiction is always

14   there.  The people you associate with can be triggers for

15   using again, and we want you to succeed and at least to have

16   some life with your children and grandchildren.

17             THE DEFENDANT:  Yeah.

18             THE COURT:  The defendant shall submit to a

19   reasonable search condition of residence, storage facility,

20   office, or vehicle to a search conducted by the probation

21   officer at a reasonable time in a reasonable manner based upon

22   reasonable suspicion of contraband or evidence of a violation

23   of a condition.

24             The defendant shall participate in a cognitive

25   behavioral treatment regimen, and there are a number of them

1    that might apply in this case.  She shall actively participate

2    in treatment until successfully discharged or until the

3    probation officer has excused her from the treatment regimen.

4    What we hope to accomplish or what I hope to accomplish by

5    ordering a cognitive behavioral treatment regimen is something

6    that I have a sense that Jacqueline Garcia already is aware

7    of, that there is a huge contradiction between what her

8    friends are saying about her in her letter and how her life

9    was being led and how the addiction was taking her life or

10   taking it away from her, and the thinking that allowed that to

11   occur is something that needs to be examined.

12          I find that community restitution is not authorized

13   in this case.  I find the defendant does not have the ability

14   to pay a fine within the guideline range but is able to pay a

15   reduced fine of $800, due immediately, inclusive of penalties

16   and interest if applicable.

17          I might mention in regard to fines.  I don't know if

18   Mr. Healy has seen it.  The Ninth Circuit Court of Appeals has

19   come out with an opinion recently that they will not have

20   a -- they will not support collection of a fine unless the

21   Court orders a particular schedule for payment of that fine.

22   It's kind of interesting.  I will be glad to give that case to

23   whoever might be interested in seeing it.  I haven't seen that

24   from any of the correctional institutions located within the

25   Tenth Circuit or elsewhere.

1        It is ordered the defendant shall pay a special

2   assessment fee in the amount of $100 per count which shall be

3   due immediately.  Payments for monetary obligations shall be

4   made payable by cashier's check or money order to the Clerk of

5   the District Court at 2120 Capitol Avenue, Room 2131.  She

6   shall participate in the Inmate Financial Responsibility

7   Program to pay her monetary obligations.  She shall pay all

8   financial obligations immediately.  Those not paid immediately

9   or through the Inmate Financial Responsibility Program shall

10  be paid commencing 60 days after her release from confinement

11  in monthly payments of at least $25 or 10 percent of her gross

12  monthly income, whichever is greater.  All monetary payments

13  shall be satisfied not less than 60 days prior to the

14  expiration of the five-year term of supervised release.

15        The Court recommends -- here also I want to advise

16  Miss Garcia that the Government has been in contact with the

17  Bureau of Prisons and I believe has asked that there be

18  separation of you and Sigi from others who are involved in the

19  conspiracy.  That may have some influence as to where you are

20  ultimately placed.  There are a limited number of facilities

21  for women.  Waseca is one.  I have no objection to

22  recommending Waseca in this matter consistent with your

23  classification by the Bureau of Prisons and by the need to

24  provide adequate separation of offenders.  So I would

25  recommend that you, all other things being equal, that you be

1   allowed to serve your time at Waseca, close to family members

2   in Nebraska.

3           I also strongly recommend, although you may not

4   receive the time benefits -- and in this case it is

5   particularly difficult for me to see why you would not in that

6   I don't have any evidence other than possession of firearms

7   and access to firearms at your home in and around controlled

8   substances that they were waved at anybody or used to collect

9   money or discharged or anything of that nature by you.

10  Nevertheless, I think the Bureau of Prisons, rightly or

11  wrongly, imposes their own requirements.  I strongly recommend

12  that you be allowed to participate in the Residential Drug

13  Abuse Program, which I think gets you ready to come out,

14  not -- you're not going to be ready to come out.  You will be

15  away for a long time, and so you're going to need to do

16  everything you can to prepare yourself and to -- need a

17  tremendous amount of strength to return and stay sober and to

18  reconnect with your family and children.

19          I want to advise you that you have not waived your

20  right to appeal as a condition of your Plea Agreement.  I want

21  to inform you that you have 14 days from the date of entry of

22  judgment within which you need to file a notice of appeal if

23  that is your desire.  You should consult with your attorney

24  about any thoughts that you might have as to whether or not

25  you wish to proceed to file an appeal.  However, if you fail

1    to file the notice within 14 days, you may, in fact, lose your

2    right to appeal.  Do you understand?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Do you have any questions that you'd like

5    to ask about the judgment and sentence of the Court?

6              THE DEFENDANT:  No, sir.

7              THE COURT:  All right.  We really want you to come

8    out and be healthy and take care of yourself.

9              Anything further, Mr. Healy?

10             MR. HEALY:  No, Your Honor.  Thank you.

11             THE COURT:  Thank you.

12             MR. FLEENER:  No, sir.

13             THE COURT:  I'll stay here until the Marshal comes

14   back with the next defendant.

15         (Proceedings concluded 2:59 p.m.,

16         July 26, 2013.)

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4          I, JULIE H. THOMAS, Official Court Reporter for the

5    United States District Court for the District of Wyoming, a

6    Registered Merit Reporter and Certified Realtime Reporter, do

7    hereby certify that I reported by machine shorthand the

8    proceedings contained herein on the aforementioned subject on

9    the date herein set forth, and that the foregoing pages

10   constitute a full, true and correct transcript.

11          Dated this 27th day of September, 2013.

12

13

14

15                    /s/ Julie H. Thomas

16                    JULIE H. THOMAS
                      Official Court Reporter
17                    Registered Merit Reporter
                      Certified Realtime Reporter
18                    CA CSR No. 9162

19

20

21

22

23

24

25